UNITED STATES, Appellee/Cross-Appellant

v.

Justin M. PIOLUNEK, Senior Airman
U.S. Air Force, Appellant/Cross-Appellee

Nos. 14-0283 and 14-5006

Crim. App. No. 38099

United States Court of Appeals for the Armed Forces

Argued October 8, 2014

Decided March 26, 2015

RYAN, J., delivered the opinion of the Court, in which BAKER, C.J., STUCKY, and OHLSON, JJ., joined. ERDMANN, J., filed a separate opinion dissenting in part and concurring in the result.


Counsel


For Appellant/Cross-Appellee: Greg Gagne, Esq. (argued); Captain Lauren A. Shure (on brief); Major Zaven Saroyan.

For Appellee/Cross-Appellant: Captain Thomas J. Alford (argued); Colonel Don M. Christensen and Gerald R. Bruce, Esq. (on brief).

Military Judge: Jefferson B. Brown


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of knowing and wrongful possession, on divers occasions, of one or more visual depictions of a sexually explicit nature of a minor child; knowing and wrongful receipt, on divers occasions, of one or more visual depictions of a sexually explicit nature of a minor child; enticing a minor child, on divers occasions, to send him visual depictions of a sexually explicit nature; and communicating indecent language to a minor on divers occasions, all in violation of clause (2) of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. United States v. Piolunek, 72 M.J. 830, 833 (A.F. Ct. Crim. App. 2013). The members sentenced Appellant to a dishonorable discharge, confinement for one year and six months, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged. Id.

On April 1, 2014, we granted review of the following issue:

> WHETHER APPELLANT'S CONVICTIONS FOR POSSESSION AND RECEIPT OF CHILD PORNOGRAPHY ON DIVERS OCCASIONS MUST BE SET ASIDE BECAUSE SEVERAL IMAGES OFFERED IN SUPPORT OF THE SPECIFICATIONS ARE NOT CHILD PORNOGRAPHY AND ARE CONSTITUTIONALLY PROTECTED, A GENERAL VERDICT WAS ENTERED, AND IT IS IMPOSSIBLE TO DETERMINE WHETHER SAID IMAGES CONTRIBUTED TO THE VERDICT.

On April 18, 2014, on certification under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2012), the Judge Advocate General

United States v. Piolunek, Nos. 14-0283/AF & 14-5006/AF

of the Air Force asked this Court to consider the following question:

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN FINDING THAT IMAGES 8308, 8313, AND 0870 DID NOT CONSTITUTE VISUAL DEPICTIONS OF A MINOR ENGAGED IN SEXUALLY EXPLICIT CONDUCT AS A MATTER OF LAW.

The certified question, while phrased as a question of law, misapprehends the underlying basis for the decision of the United States Air Force Court of Criminal Appeals (CCA), which was, "none of these three images contain an exhibition of her genitals or pubic region." Piolunek, 72 M.J. at 837. Whether any given image does or does not display the genitals or pubic region is a question of fact, albeit one with legal consequences. This Court may "take action only with respect to matters of law." Article 67(c), UCMJ, 10 U.S.C. § 867 (2012).

Our conclusion that the CCA's decision turned on a question of fact causes us to revisit the premise of our recent decision in United States v. Barberi, 71 M.J. 127 (C.A.A.F. 2012), and determine that it was wrongly decided. Barberi set aside a general verdict for possession of child pornography. Id. at 128-29. Since four of six images presented to the members were found by the United States Army Court of Criminal Appeals not to constitute child pornography, we reasoned that Stromberg v. California, 283 U.S. 359, 368-70 (1931), required us to set aside the verdict because we could not know whether the members

3

based their verdict on those images. Barberi, 71 M.J. at 128-29, 131-32. We erred.

In this case, the military judge instructed members that it was their role to find which, if any, images in question exhibited the features that met the definition of minors "engaging in sexually explicit conduct." Absent an unconstitutional definition of criminal conduct, flawed instructions, or evidence that members did not follow those instructions, none of which are present here, and none of which were present in Barberi, there is simply no basis in law to upset the ordinary assumption that members are well suited to assess the evidence in light of the military judge's instructions. Barberi was not a case of Stromberg error. Neither is the instant case.

Our decision supersedes Barberi, and Appellant's convictions are affirmed.

## I. FACTS

From December 2009 to September 2010, Appellant received a series of e-mails from KLR, a minor under the age of sixteen, containing images depicting her nude or semi-nude. Appellant was charged with "wrongfully and knowingly" receiving and possessing "visual depictions of a sexually explicit nature of . . . a minor child" on divers occasions.

The military judge instructed the members that, in order to

4

convict on both specifications, they needed to find that Appellant knowingly received and possessed "visual depictions" of minors "engaging in sexually explicit conduct" on more than one occasion.[1]  The military judge offered a definition of "sexually explicit conduct" that closely mirrored the definition contained in the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. §§ 2252A-2260 (2006).  See 18 U.S.C. § 2256(2)(A)(v).  He noted that "'[s]exually explicit conduct' means lascivious exhibition of the genitals or pubic area of any person."  Members were instructed to consider the following factors, in conjunction with "an overall consideration of the totality of circumstances," to determine whether an exhibition was lascivious:

> [W]hether the focal point of the depiction is on the genitals or pubic area[;] whether the setting is sexually suggestive[;] whether the child is depicted in an unnatural pose or in inappropriate attire considering the child's age; whether the child is partially clothed or nude; whether the depiction suggests sexual coyness or willingness to engage in sexual activity; whether the depiction is intended to elicit a sexual response in the viewer; whether the depiction portrays the child as a sexual object; and any captions that may appear on the depiction or materials accompanying the depiction.

The members thus had to determine that the images did or

---

[1] The military judge told members that Appellant was charged with "knowing receipt of child pornography," and "knowing possession of child pornography."  The military judge misstated the charges.  However, the military judge's instructions regarding the elements of the crime were consistent with the charges.

United States v. Piolunek, Nos. 14-0283/AF & 14-5006/AF

did not display the genitals or pubic area, and then apply the so-called Dost factors, inter alia, to determine whether that depiction constituted a "lascivious exhibition."  See United States v. Roderick, 62 M.J. 425, 429-30 (C.A.A.F. 2006) (citing United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986)).  Members evaluated twenty-two images in total, reaching a general verdict of guilty on the specifications related to the images.

## II.  AFCCA DECISION

The AFCCA affirmed the findings and sentence, but determined that only nineteen of the twenty-two images constituted "visual depictions of a minor engaging in sexually explicit conduct," as three images did not show KLR's genitals or pubic area, the threshold question for whether the images met the definition of sexually explicit conduct provided by the military judge.  Piolunek, 72 M.J. at 836-37 ("If the images do not depict the genital or pubic region, we stop our analysis.").  The court held that these three images were constitutionally protected and that, based on our decision in Barberi, this was Stromberg error.  Id. at 837.  It nonetheless determined, based on a three-factor test of its own devising, that there was no "reasonable possibility that the evidence complained of might

6

have contributed to the conviction."[2]  Id. (quoting Chapman v. California, 386 U.S. 18, 23 (1967)); see also Piolunek, 72 M.J. at 838.

## III.  DISCUSSION

### A.

Article 67(c), UCMJ, states that "[t]he Court of Appeals for the Armed Forces shall take action only with respect to matters of law."  10 U.S.C. § 867.  In this Court's first published opinion, United States v. McCrary, the majority stated, "[t]here can be no question that the Congress of the United States . . . did not intend to extend review by this court to questions of fact. . . . [T]he Uniform Code of Military Justice expressly limits review by this court."  1 C.M.A. 1, 3, 1 C.M.R. 1, 3 (1951) (internal citation omitted).  A subsequent opinion specified that "questions of credibility, or assertions that the factual basis for a ruling should be reinterpreted are not reviewable by the Court."  United States v. Nargi, 2 M.J. 96, 98 (C.M.A. 1977); see also United States v. Burris, 21 M.J. 140, 144 (C.M.A. 1985).  "[W]e may not reassess a lower court's fact-finding."  United States v. Leak, 61 M.J. 234, 241 (C.A.A.F. 2005).

---

[2] We leave for another day the question whether Stromberg error is susceptible to a harmless error analysis:  If in fact a conviction rests on an unconstitutional statute or legal theory, it is at best questionable why or how the weight of the evidence overcomes that constitutional infirmity.

United States v. Piolunek, Nos. 14-0283/AF & 14-5006/AF

"Recognizing that the distinction between a question of law and a question of fact is not always clearly defined, we must nevertheless avoid resolving questions of fact which are separable from a question of law." United States v. Lowry, 2 M.J. 55, 58 (C.M.A. 1976), superseded on other grounds by Military Rule of Evidence 305(e), as recognized in United States v. Spencer, 19 M.J. 184, 186-87 (C.M.A. 1985). In our view, what the Judge Advocate General of the Air Force seeks is to have us revisit the factual basis for the CCA's legal ruling. The CCA's determination that three images did not constitute visual depictions of a minor engaging in sexually explicit conduct was based on its conclusion that "none of these three images contain an exhibition of her genitals or pubic region." Piolunek, 72 M.J. at 837. Since that threshold factual determination is eminently separable from its legal consequence, it is not one that this Court may revise.[3]

B.

Having parsed this analysis in a way we did not in Barberi, we recognize that properly instructed members are well suited to assess the evidence and make the same factual determination that

_____

[3] Consistent with Article 67(c), UCMJ, a different analysis pertains if a CCA's finding of fact is clearly erroneous or unsupported by the record. See, e.g., United States v. Gore, 60 M.J. 178, 185 (C.A.A.F. 2004); United States v. Teffeau, 58 M.J. 62, 66-67 (C.A.A.F. 2003); United States v. Tollinchi, 54 M.J. 80, 82 (C.A.A.F. 2000); United States v. Avery, 40 M.J. 325, 328 (C.M.A. 1994). This is not such a case.

the CCA did with respect to whether an image does or does not depict the genitals or pubic region, and is, or is not, a visual depiction of a minor engaging in sexually explicit conduct. This is distinguishable from the altogether different situation in Stromberg and its progeny.  In Stromberg, jurors were told that they could convict the appellant under any of three clauses of a statute.  283 U.S. at 363-64.  The jury returned a general verdict without specifying the clause under which it had convicted.  Id. at 367-68.  The Supreme Court found one of the three clauses to be unconstitutional on grounds of vagueness and ruled that "the conviction of the appellant, which so far as the record discloses may have rested upon that clause exclusively, must be set aside."  Id. at 370.

Stromberg applies only where members may have convicted on the basis of an unconstitutional statute or legal theory.  See, e.g., Leary v. United States, 395 U.S. 6, 31-32 (1969) ("It has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside."); Williams v. North Carolina, 317 U.S. 287, 292 (1942) ("To say that a general verdict of guilty should be upheld though we cannot know that it did not rest on the invalid constitutional ground on which the case was submitted to the jury, would be to countenance a procedure which would cause a serious impairment

of constitutional rights."); <u>United States v. Cendejas</u>, 62 M.J. 334, 339 (C.A.A.F. 2006) (setting aside a conviction where it was not possible to "determine that the military judge relied only on those portions of the definition later found to be constitutional by the Supreme Court"); <u>cf.</u> <u>Cramer v. United States</u>, 325 U.S. 1, 36 n.45 (1945).[4]

That is not this case, as neither the statute nor the legal theory presented to the members was constitutionally infirm. Here, as in <u>Barberi</u>, the military judge's definition of the charged behavior was consistent with the CPPA's definition of child pornography as revised pursuant to the decision in <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234 (2002). <u>See</u> 18 U.S.C. § 2256(2)(A)(v); 18 U.S.C. § 2256(8)(A). Similarly, this Court has adopted the <u>Dost</u> factors. <u>Roderick</u>, 62 M.J. at 430. While the Court in <u>Barberi</u> divided on whether there is an <u>additional</u> category of images that constitute child pornography, <u>see</u> <u>Barberi</u>, 71 M.J. at 131; <u>see also</u> <u>United States v. Warner</u>,

---

[4] <u>See also</u> <u>Street v. New York</u>, 394 U.S. 576, 586-87, 589, 593-94 (1969) (applying the <u>Stromberg</u> rule because an unconstitutional statutory ban on verbal contempt of the national flag might have formed a basis for the petitioner's conviction); <u>Thomas v. Collins</u>, 323 U.S. 516, 540-41 (1945) (reversing judgment of contempt against union representative for violating restraining order proscribing solicitations, where motion for judgment of contempt and contempt order did not distinguish between constitutionally protected "general" solicitations and unprotected solicitations); <u>Zant v. Stephens</u>, 462 U.S. 862, 884 (1983) (not applying <u>Stromberg</u> because constitutionally protected conduct was neither a basis for the conviction nor an aggravating factor in sentencing).

United States v. Piolunek, Nos. 14-0283/AF & 14-5006/AF

73 M.J. 1, 3-4 (C.A.A.F. 2013), we all agree that images that meet the CPPA's definition of child pornography are not constitutionally protected.

While members are not presumed to be suited to make legal determinations of constitutional law, they are presumed to be competent to make factual determinations as to guilt.

> When . . . jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. . . . [T]he opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence.

Griffin v. United States, 502 U.S. 46, 59 (1991) (citations omitted).[5]  Moreover, "[i]n the absence of evidence indicating otherwise, a jury is presumed to have complied with the instructions given them by the judge."  United States v. Ricketts, 23 C.M.A. 487, 490, 50 C.M.R. 567, 570 (1975); see also United States v. Hill, 62 M.J. 271, 276 (C.A.A.F. 2006); United States v. Holt, 33 M.J. 400, 408 (C.M.A. 1991).

---

[5] Cf. Miller v. California, 413 U.S. 15, 30 (1973) (explaining that "[t]he adversary system, with lay jurors as the usual ultimate factfinders in criminal prosecutions, has historically permitted triers of fact to draw on the standards of their community" to determine whether material is obscene and therefore not subject to constitutional protection); Roth v. United States, 354 U.S. 476, 489-90 (1957) (affirming a judgment obtained after the judge recited the proper definition of obscenity and told jurors "you and you alone are the exclusive judges of" whether the materials in question are obscene).

Contrary to our conclusion in Barberi, convictions by general verdict for possession and receipt of visual depictions of a minor engaging in sexually explicit conduct on divers occasions by a properly instructed panel need not be set aside after the CCA decides several images considered by the members do not depict the genitals or pubic region. This case involves a straightforward application of the "general verdict rule." 71 M.J. at 131. As we noted in United States v. Rodriguez, "[t]he longstanding common law rule is that when the factfinder returns a guilty verdict on an indictment charging several acts, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." 66 M.J. 201, 204 (C.A.A.F. 2008).

The record shows that the members were required to determine whether one or more of the twenty-two images constituted sexually explicit conduct based on the definition and explanation given by the military judge. The military judge directed the members to "consider whether the depictions as set forth in my written instructions constitute sexually explicit conduct as I have previously defined" when "determining whether the accused is guilty of this offense, beyond a reasonable doubt." The members convicted Appellant of possession and receipt of one or more depictions on divers occasions. Piolunek, 72 M.J. at 833. As the CCA found that the evidence was legally and factually sufficient with respect to nineteen of

the twenty-two images, id. at 837, and with no reason to disturb well-settled precedent on the application of the general verdict rule, Appellant's conviction stands.

## IV. CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Piolunek, Nos. 14-0283/AF & 14-5006/AF

ERDMANN, Judge (dissenting in part and concurring in the result):

As I cannot agree with the majority's interpretation of Stromberg v. California, 283 U.S. 359 (1931), and the impact of that decision on United States v. Barberi, 71 M.J. 127 (C.A.A.F. 2012), I respectfully dissent from that portion of the majority opinion. However, as I agree that the decision of the United States Air Force Court of Criminal Appeals should be affirmed, I concur in the result.

## Background

Among other specifications, Piolunek was charged with receipt and possession of visual depictions of a sexually explicit nature of a minor under Article 134(2), UCMJ, 10 U.S.C. § 934(2). Although not charged with violation of the Child Pornography Prevention Act (CPPA) under Article 134(3) (crimes and offenses not capital), the military judge provided the members with definitions which were largely consistent with those found in that act. The government introduced twenty-two images of alleged child pornography to prove the receipt and possession specifications. The military judge instructed the members that the specifications required "visual depictions of minors engaging in sexually explicit conduct" and then defined "sexually explicit conduct" as the "lascivious exhibition of the genitals or pubic area of any person." The members subsequently

found Piolunek guilty of those specifications in a general verdict.

The CCA affirmed the conviction, but upon reviewing the images, held that three of the images did not meet the definition that the military judge had provided for "sexually explicit conduct." United States v. Piolunek, 72 M.J. 830, 837 (A.F. Ct. Crim. App. 2013). Specifically, the CCA found that the three images did not contain an exhibition of the genitals or pubic area and therefore did not constitute visual depictions of a minor engaging in sexually explicit conduct. Id. As a result, those images did not constitute child pornography as defined by the military judge. Id. The CCA, however, went on to hold that the error was harmless, reasoning that there was no possibility that the three images might have contributed to the conviction. Id. at 837–39.

We initially granted an issue brought by Piolunek, which asked this court to set aside his convictions of possession and receipt of child pornography because three of the images considered by the members did not constitute child pornography and were therefore constitutionally protected, citing Barberi. The government then certified an issue which asked whether the CCA erred when it found that the three images in question did not constitute child pornography.

Granted Issue

We were faced with a strikingly similar factual situation in Barberi. The appellant in that case had been convicted of possession of child pornography on the basis of six images introduced by the government. 71 M.J. at 129. The military judge had, similar to this case, provided the members with the relevant definitions from the CPPA. Id. at 130. The Army Court of Criminal Appeals (CCA) found that four of the six images were legally and factually insufficient "to support Barberi's conviction for knowing possession of child pornography because none of the four images depicted any portion of SD's genitalia or pubic area." Id. at 130 (citation omitted).

Before this court, Barberi argued that since four of the six images were constitutionally protected, the entire conviction must be set aside as this court could not determine whether the conviction rested upon constitutional or unconstitutional grounds, relying on Stromberg. Id. at 129.

In Barberi, we initially cited the common law rule that when a factfinder returns a general verdict on an indictment charging several acts, the verdict will stand if the evidence is sufficient to any one of the acts. Id. at 131. However, we went on to note that an exception to the general verdict rule exists when one of the grounds of the conviction is found to be unconstitutional. Id. That rule originated in Stromberg, where

3

the Supreme Court held that when there was a general verdict on

a single-count indictment which rested on both constitutional

and unconstitutional grounds, the guilty verdict must be set

aside.  Id.  Accordingly, in Barberi we reversed the CCA,

holding:

> Because we cannot know which prosecution exhibits
> formed the basis for the member's decision, and their
> findings may have been based on constitutionally
> protected images, the general verdict to the
> possession of child pornography charge must be set
> aside.

Id. at 132.

Today the majority reverses our opinion in Barberi, holding

that Stromberg "applies only where members may have convicted on

the basis of an unconstitutional statute or legal theory."

United States v. Piolunek, __ M.J. __, __ (9) (C.A.A.F. 2015).

In affirming the CCA, the majority also holds:

> Absent an unconstitutional definition of criminal
> conduct, flawed instructions, or evidence that members
> did not follow those instructions, none of which are
> present here, and none of which were present in
> Barberi, there is simply no basis in law to upset the
> ordinary assumption that members are well suited to
> assess the evidence in light of the military judge's
> instructions.

Id. at __ (4).

I respectfully disagree with the majority's holding that

Stromberg is limited to only those situations where the

government relies on an unconstitutional statute or legal

theory.  My reading of Stromberg, and its progeny, indicates

4

that the rule should apply to all situations where the conviction rests on both constitutionally protected conduct and unprotected conduct, regardless of the litigation process which revealed the constitutional infirmity.

In Barberi, we looked to Zant v. Stephens, 462 U.S. 862 (1983), to inform our interpretation of Stromberg.  71 M.J. at 131.  In Zant, the Supreme Court discussed the Stromberg line of cases in which the conviction rested upon both protected and unprotected conduct:

> The second rule derived from the Stromberg case is illustrated by Thomas v. Collins, 323 U.S. 516, 528-529 (1945), and Street v. New York, 394 U.S. 576, 586-590 (1969).  In those cases we made clear that the reasoning of Stromberg encompasses a situation in which the general verdict on a single-count indictment or information rested on both a constitutional and an unconstitutional ground.  In Thomas v. Collins, a labor organizer's contempt citation was predicated both upon a speech expressing a general invitation to a group of nonunion workers, which the Court held to be constitutionally protected speech, and upon solicitation of a single individual.  The Court declined to consider the State's contention that the judgment could be sustained on the basis of the individual solicitation alone, for the record showed that the penalty had been imposed on account of both solicitations. "The judgment therefore must be affirmed as to both or as to neither."  323 U.S. at 529.  Similarly, in Street, the record indicated that petitioner's conviction on a single-count indictment could have been based on his protected words as well as on his arguably unprotected conduct, flag burning. We stated that, "unless the record negates the possibility that the conviction was based on both alleged violations," the judgment could not be affirmed unless both were valid.  394 U.S. at 588.

> The Court's opinion in Street explained:

5

    "We take the rationale of Thomas to be that when a single-count indictment or information charges the commission of a crime by virtue of the defendant's having done both a constitutionally protected act and one which may be unprotected, and a guilty verdict ensues without elucidation, there is an unacceptable danger that the trier of fact will have regarded the two acts as 'intertwined' and have rested the conviction on both together.  See 323 U.S. at 528-529, 540-541.  There is no comparable hazard when the indictment or information is in several counts and the conviction is explicitly declared to rest on findings of guilt on certain of these counts, for in such instances there is positive evidence that the trier of fact considered each count on its own merits and separately from the others."  Ibid. (footnote omitted).

    The rationale of Thomas and Street applies to cases in which there is no uncertainty about the multiple grounds on which a general verdict rests.  If, under the instructions to the jury, one way of committing the offense charged is to perform an act protected by the Constitution, the rule of these cases requires that a general verdict of guilt be set aside even if the defendant's unprotected conduct, considered separately, would support the verdict.

462 U.S. at 882-83 (footnote and citations omitted).

I see no constitutionally significant distinction between the situations presented in this case and Barberi, and the situations presented in Thomas and Street.  Here, the constitutionality of a particular criminal statute is not at issue, but rather a situation where the proof relied on by the government in two single count charges contained both constitutionally protected and unprotected images.  In my view, the Stromberg rule should be read to include a general verdict conviction based on both constitutionally protected conduct and

6

unprotected conduct regardless of the litigation process that revealed the constitutionality infirmity.[1]  I would therefore reaffirm our rationale in Barberi.

However, even if I were to assume the majority's position to be correct, under its analytical framework the result would appear to be the same.  The majority holds that Stromberg applies only to those "convicted on the basis of an unconstitutional statute or legal theory."  Piolunek, __ M.J. at __ (9).  Certainly the constitutionally protected images were part and parcel of the government's legal theory of the case.

The majority also holds:

> Absent an unconstitutional definition of criminal conduct, flawed instructions, or evidence that members did not follow those instructions, none of which are present here, and none of which were present in Barberi, there is simply no basis in law to upset the ordinary assumption that members are well suited to assess the evidence in light of the military judge's instructions.

Id. at __ (4).

---

[1] I agree that there are no Supreme Court or circuit court cases which address the situation presented in this case.  That lack of precedent from the Article III system may be explained by the different roles of the intermediate courts in the military justice system and the Article III system.  Unlike the Courts of Criminal Appeals in the military system, federal circuit courts lack the ability to make a factual finding that one or more of the images submitted to a jury, which resulted in a general verdict conviction, contained constitutionally protected conduct.  As a result, this factual circumstance will not present itself in the Article III system.

In both this case and Barberi, the military judge provided the members with instructions which contained constitutional definitions of the criminal conduct.  However, in both cases the CCA found that some of the images reviewed by the members did not meet the statutory definitions and were therefore constitutionally protected, indicating that the members had not followed the military judge's instructions.[2]

As for the assertion that members are well suited to make constitutional determinations, the Supreme Court in Griffin v. United States, 502 U.S. 46, 59 (1991), noted:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to the law -- whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime.  When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error.  Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence.

### Prejudice

The CCA held that although the error was of constitutional dimension, it could be reviewed for prejudice.  Piolunek, 72

---

[2] Contrary to the government's concerns that this application of Stromberg and Barberi will make the prosecution of child pornography offenses difficult if not impossible, the proper procedure is for the United States to review all of the images prior to their introduction at trial to assure that the images fall within the definition of child pornography in the CPPA and are therefore not constitutionally protected.

M.J. at 837.  The CCA then distinguished this case from Barberi and was "convinced beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Id. at 839 (citation and internal quotation marks omitted).

In Barberi we recognized that this type of constitutional error is reviewable for harmlessness and applied the Chapman test as to "'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'"  Barberi, 71 M.J. at 132 (quoting Chapman v. California, 386 U.S. 18, 23 (1967)).  In performing its harmlessness analysis, the CCA reviewed the quantitative strength of the admissible evidence, the qualitative nature of that evidence and the circumstances surrounding the offense as they related to the elements of the offense.  Piolunek, 73 M.J. at 837–39.  While I view the CCA's analysis appropriate in this case, I would stress that the three-part test relied upon by the CCA is not an exhaustive list of considerations that courts should consider, as the harmlessness analysis will necessarily differ in each case.

I would hold that Barberi correctly interprets Stromberg and that the CCA correctly applied both the Stromberg analysis and the harmless test as set forth in Barberi.  I would therefore affirm the decision of the CCA, although on the grounds set forth in this separate opinion.

9